# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  **v.**                                        **Case No. 04-CR-239**

**ALFREDO MONTANEZ**
    **Defendant.**

## SENTENCING MEMORANDUM

Defendant Alfredo Montanez grew up poor on the south side of Milwaukee, never knew his real father, and allegedly suffered abuse and neglect by his mother. Angry and disillusioned, he associated with a gang, was expelled from school, and between the ages of fifteen and seventeen committed numerous law violations, culminating in his conviction as an adult of cocaine delivery. Within a few weeks of his release from prison on that offense, the police received a tip that defendant possessed a gun. Officers traveled to his home, received permission to search from his mother, and recovered a pistol. As a result, state authorities revoked defendant's extended supervision on the cocaine case, and he served an additional 18 months in prison. Upon his release, defendant was transferred to federal custody to face an indictment for possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1).

Defendant pleaded guilty to the offense, and I set the case for sentencing. Upon review of the pre-sentence report ("PSR"), I noted that defendant, by then age twenty-two, had made great strides in turning his life around since his release from state prison. He obtained his HSED, attended classes at MATC and earned his bricklaying certificate. His family noted that he no longer associated with his old friends, and he established a stable relationship with a

girlfriend who spoke highly of him. After some early hiccups, he complied with the conditions of pre-trial release and submitted negative drugs screens. It appeared that defendant was on the right track for the first time since the age of fifteen. Not wanting squelch this progress (and curious if defendant could sustain it), I adjourned sentencing for six months. I directed defendant to find work and report to pre-trial services twice per month.

When defendant returned for sentencing, I noted that his progress had been somewhat mixed. He had not located full-time employment, instead working part-time for cash, and had reported to probation only once per month rather than twice. He also split with his girlfriend and impregnated another woman. On the positive side, his drugs screens remained negative, and he had joined the Latino Community Center, finding some structure there.

Defendant argued that he had proven himself in the community and requested a sentence of probation. However, based on the somewhat mixed picture and the seriousness of the offense, I found such a sentence insufficient. Instead, I imposed a sentence of 15 months imprisonment. In this memorandum, I set forth the reasons.

## I. GUIDELINE CALCULATION

In imposing sentence, the court must first calculate the advisory sentencing guideline range, then select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007). In the present case, the PSR set defendant's offense level at 17 (base level 20 due to defendant's previous felony controlled substance conviction, U.S.S.G. § 2K2.1(a)(4)(A), minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at V, producing an imprisonment range of 46-57 months under the advisory sentencing guidelines. Neither side objected to the PSR's guideline calculations, which I found

2

correct and therefore adopted.

## II. SECTION 3553 FACTORS

"When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Harris, 490 F.3d 589 (7th Cir. 2007). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant.

While the district court must always consider the guidelines, it may not presume that "the

3

Guidelines sentence should apply." Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, the court's job is to impose a sufficient sentence under all of the § 3553(a) factors, with no "thumb on the scale favoring a guideline sentence." United States v. Schmitt, No. 06-2207, 2007 U.S. App. LEXIS 18662, at *14 (7th Cir. Aug. 7, 2007) (quote marks omitted); see also United States v. DeMaree, 459 F.3d 791, 795 (7th Cir. 2006) (stating that the court's discretion to impose a reasonable sentence outside the range is unfettered).

### III. DISCUSSION

#### A. Nature of Offense

As noted, in the present case the police received a tip that defendant had a gun in his house, so they went there, obtained permission to search from his mother, then found the gun, a loaded .380 pistol, in defendant's room. It was unclear how the gun got there, but defendant's mother stated that someone else brought it to the house and gave it to defendant to hold. Defendant had been released from state prison just a few weeks earlier, so he obviously made a poor decision, even if he was just holding the gun for another.

#### B. Character and Background of Defendant

There was no doubt that defendant had a rough childhood and got limited support at home. He never knew his father and states that his mother was abusive and moved from Milwaukee to Chicago when he was sixteen, effectively abandoning him. He stated that he was largely left to fend for himself for substantial periods of time. This created an angry young man who seemed to lash out at others and did not deal well with authority.

Defendant accumulated numerous contacts with the justice system prior to age eighteen, including juvenile disorderly conduct, resisting and possession of marijuana

4

adjudications, for which he was placed on probation. He performed poorly on supervision, failing to attend school and continuing to violate the law. At the age of seventeen, defendant was arrested after selling .47 grams of crack cocaine to an undercover police officer for $40. Charged as an adult, the court placed defendant on probation, but he again violated the rules and was sent to state prison for 18 months. Withing a few weeks of his release, defendant was caught with the gun at issue in this case, leading to another 18 months in prison.

However, during and after this revocation sentence, defendant seemed to mature. He adjusted well to incarceration, sustaining just one conduct report, then obtained his HSED and enrolled in classes at MATC after his release. He also disassociated from his old friends, re-united with his family and established a stable relationship. As noted above, I adjourned the case for a few months to track his progress, and he largely continued to move in the right direction, working part-time, submitting negative drug screens and frequenting the Latino Community Center. I was concerned, however, by his failure to report to pre-trial services consistently and to secure full-time work.[1] He certainly could have been more aggressive in pursuing his goals during the continuance, rather than depending on the Community Center to help him find work.

**C.    Imposition of Sentence**

Unlawful firearm possession is a very serious crime, and as the government noted, easy access to guns has caused considerable damage on the south side of Milwaukee. Further, although defendant clearly made progress, the picture remained somewhat mixed, and his

---

[1] Defendant stated that health problems limited him to part-time work, but he submitted no medical evidence substantiating that claim. I also found irresponsible his impregnation of a woman while this case pended.

5

record suggested that some period of confinement was needed to protect the public and deter him from re-offending. Therefore, I concluded that a probationary sentence would be insufficient to reflect the seriousness of the crime, deter defendant and others, and protect the public.

The guidelines suggested a prison term of 46-57 months. While I agreed that some period of incarceration was necessary, under all of the circumstances, I found the guideline term greater than necessary.

As an initial matter, the parties agreed that defendant should receive "credit" for the 18 months he served in state prison based on the same conduct. Although defendant was arrested on this offense in September 2004 (and indicted shortly thereafter), he did not appear in federal court until March 2006, after he completed his state sentence after revocation. I agreed with the parties that a concurrent sentence would have been appropriate under the circumstances, and that the sentence was appropriately adjusted to reflect the lost opportunity for concurrent time.[2]

Even after this adjustment, I found that other factors warranted additional consideration.

---

[2] I recognize that the guidelines recommend consecutive sentences when the defendant is on probation or parole at the time of commission of the instant offense and has had such parole revoked. U.S.S.G. § 5G1.3 cmt. n.3(C). However, 18 U.S.C. § 3584 affords the court discretion in making this determination, and under all of the circumstances of this case, a concurrent term would have produced a total punishment sufficient to satisfy the purposes of sentencing, had the revocation sentence remained extant. I also recognize that, under the guidelines, an "adjustment" is appropriate only when the prior sentence is based on acts that are relevant conduct to the instant offense. See U.S.S.G. § 5G1.3(b); see also U.S.S.G. § 5K2.23 (allowing a downward departure when a sentence to which § 5G1.3(b) would have applied discharges prior to imposition of sentence in the instant case). I did not grant a guideline adjustment in this case. Rather, I exercised discretion under § 3553(a) in finding that the revocation term diminished the need for additional punishment on the instant offense and to, in effect, grant credit for that revocation sentence. A total term of 33 months was sufficient.

6

First, the offense level in felon in possession cases is based on the nature of the defendant's prior record. Here, defendant's base offense level was elevated to 20 by his previous controlled substance conviction. However, that case, which involved .47 grams of crack sold for $40 by a seventeen-year-old who apparently had been deserted by his family, did not reflect the degree of danger to the public the Commission likely had in mind when it set the level under U.S.S.G. § 2K1.2(a)(4).

Second, the guideline range was further elevated by the fact that defendant fell in criminal history category V. That category was based largely on juvenile sentences, which likely would not have scored as many points if defendant had been an adult when he committed the offenses. In my experience, in Milwaukee County defendants often do not get placed on probation for resisting or disorderly conduct offenses, as defendant did as a juvenile. That resulted in those cases scoring points when such offenses often do not for adults under U.S.S.G. § 4A1.2(c)(1). Further, defendant was also placed on probation for possessing marijuana and later revoked, leading to 2 criminal history points. However, adults in this community who possess marijuana are almost always fined, at least for a first offense, as this was. The Commission has decided that certain juvenile offenses should score, but I do not think they should score more heavily than adult cases typically do. Defendant's only adult felony involved the sale of a minuscule amount of crack for $40 when he was seventeen years old. And, all of these offenses occurred when defendant was very young, very angry, and had little guidance or protection. Further, as discussed, defendant seemed to be doing better lately. For the first time since he was fifteen, he stayed out of trouble for an extended period of time, furthered his education and worked. For all of these reasons, I found that category V substantially overstated the seriousness of defendant's record and the likelihood that he would

re-offend. See U.S.S.G. § 4A1.3(b).

Third, there was no evidence that defendant intended or threatened any harm with the gun. Nor was he carrying it in the community, on his person or in his car. It appeared that he was simply holding it for someone else.[3]

For all of these reasons, a prison sentence below the adjusted range was sufficient to provide just punishment, deterrence and protection of the public. Under all of the circumstances, I found a sentence of 15 months sufficient but not greater than necessary. This sentence was based on the particular facts of the case and the Commission's policy statement § 4A1.3, and so it did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

## IV. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 15 months. I further ordered that he serve a three year supervised release term, the maximum permitted by statute, to ensure that he was monitored and continued his progress. The conditions of supervision appear in the judgment.

Dated at Milwaukee, Wisconsin, this 9th day of August, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[3] I did not place much weight on this factor, as there was a possibility that defendant was holding the gun for a former gang associate.

8